IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| NOELLE YOUNG, *pro se*, | ) |
| Plaintiff, | ) |
| v. | ) 7:18-cv-00207-LSC |
| POPEYE'S CHICKEN, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OF OPINION**

Before the Court is Defendant Stearman Enterprises LLC's ("Stearman's") motion for summary judgment. (Doc. 26.) Plaintiff was given an opportunity to respond to Stearman's motion, but has filed no response. The briefing period has expired. Accordingly, the motion is fully briefed and ripe for review. For the reasons stated below, Stearman's motion (doc. 26) is due to be granted and this action dismissed.[1]

**I.   BACKGROUND**[2]

---

[1]   Young's claims against Defendant Popeye's Chicken would similarly be barred by judicial estoppel.

[2]   The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff Noelle Young ("Plaintiff" or "Young") brings suit against Defendants Corey Rice[3] ("Rice"), Popeye's Chicken ("Popeye's"), and Stearman for claims arising from Young's employment at Popeye's Chicken in Tuscaloosa, Alabama. On March 7, 2016, Young filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama, Case No. 16-70380-JHH13. (Doc. 28-1 at Ex. G.) Young submitted her bankruptcy petition and asset schedule with the assistance of Attorney Eric Wilson ("Wilson"). Young had previously filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama, Case No. 15-71737-JHH13, but her petition was dismissed on February 24, 2016, due to her failure to comply with the payment plan. (Doc. 9-4 at Ex. D.) In June 2016, the bankruptcy court confirmed a Chapter 13 payment plan for Young's most recent bankruptcy petition. (Doc. 28-1 at Ex. H.)

Young's was hired by Popeye's in October of 2016 and resigned from Popeye's in February 2017. (*Id.* at Ex. I.) Also in February 2017, the Trustee of Young's Chapter 13 estate moved to dismiss Young's bankruptcy for her failure to comply with the payment plan. (*Id.* at Ex. H.) The bankruptcy court subsequently set a hearing on the motion for May 4, 2017. (Doc. 28-1 at Ex. H.) On April 28, 2017,

---

[3] Although Corey Rice is named as a Defendant in this action, the record does not indicate that Rice was ever served. Over a year has passed since the suit was filed. Accordingly, Plaintiff's claims against Rice are due to be dismissed without prejudice for failure to serve pursuant to FED. R. CIV. P. 4(m).

Young filed an EEOC charge regarding her treatment at Popeye's. (Doc. 1-1.) Plaintiff did not amend or update her bankruptcy schedule to include any claims against Popeye's and Stearman. (Doc. 28-1 at Ex. H.) On May 1, 2017, Young filled out an Affidavit of Debtor Regarding Income in preparation for the filing of another bankruptcy petition. (*Id.* at Ex. I.) This Affidavit did not reference any claims against Stearman or Popeye's. (*Id.*) On May 4, 2017, the bankruptcy court held a hearing on the Trustee's motion to dismiss, and dismissed Young's bankruptcy due to her failure to make plan payments. (Doc. 9-5 at Ex. E.)

One day later, Young filed another Chapter 13 petition in the United States Bankruptcy Court for the Northern District of Alabama, Case No. 17-70805- JHH13. (Doc. 9-3 at Ex. C.) Young was represented in this bankruptcy proceeding by both Wilson and Attorney Kathryn Lila Bettis ("Bettis"). (Doc. 9-2 at Ex. B.) In completing her asset schedule, Young denied the existence of any third party claims, answering no to Question 33, which asks whether the debtor has:

> **Claims against, third parties, whether or not you have filed a lawsuit or made a demand for payment**
> *Examples:* Accidents, employment disputes, insurances claims or rights to sue.

(Doc. 9-3 at Ex. C.) Young later in her application, answered no to a question asking whether she had been party to "any lawsuit, court action, or administrative proceeding" in the year prior to this filing. (*Id.*) Young signed these documents

under oath. On July 27, 2017, Young's Chapter 13 plan was confirmed. (Doc. 9-2 at Ex. B.) The record does not indicate that Young ever amended her asset schedules or disclosed her EEOC charge.

On August 14, 2017, Young, with the aid of Attorney Byron Perkins ("Perkins"), filed an amended EEOC charge that added a retaliation claim against Defendants. (Doc. 28-1 at Ex. J.) Young did not update or amend her asset schedules. (Doc. 9-2 at Ex. B.) In November 2017, the Young's Bankruptcy Trustee moved to dismiss Young's bankruptcy based on her failure to make payments on her payment plan. (*Id.*) In January 2018, Young's bankruptcy case was dismissed for failure to make payments. (*Id.*) One month later, Young filed this action. (Doc. 1.) Young's bankruptcy case was officially closed in March 2018, one month after she filed this action. (Doc. 9-2 at Ex. B.) Young never disclosed the claims that are the subject of this suit to the bankruptcy court.

## II.  STANDARD

Young, proceeding *pro se*, filed no response to Stearman's motion for summary judgment. Nonetheless, this Court "consider[s] the merits of the motion" in order to determine whether summary judgment is appropriate. *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms.*, Inc., 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and a "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d

1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III. DISCUSSION

Defendant asserts that Plaintiff's claims are due to be dismissed because (1) Plaintiff lacks standing to assert her claims and (2) Plaintiff's failure to disclose her EEOC charge in her bankruptcy petition judicially estops her from bringing such claims.

The Court determines standing according to differing strands of analysis: the constitutional requirements under Article III and prudential limitations on the exercise of otherwise constitutionally allowed claims. *Elend v. Basham*, 471 F.3d 1199, 1205–06 (11th Cir. 2006). To establish standing under Article III, a plaintiff must show (1) "an injury in fact," (2) "a causal connection between the injury and the

conduct complained of," and (3) that "it [is] likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). Under prudential requirements, "a plaintiff cannot raise the claims of third parties; cannot claim standing based on a generalized grievance; and must raise a claim within the zone of interest covered by a statutory conferral of standing." *Elend*, 471 F.3d at 1206 (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203–10 (11th Cir. 1991))."For a plaintiff seeking prospective relief to have standing, [s]he 'must show a sufficient likelihood that [s]he will be affected by the allegedly unlawful conduct in the future.'" *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1265 (11th Cir. 2001)).

Unlike Chapter 7 petitioners, Chapter 13 petitioners maintain standing to pursue causes of action that accrue pre-petition. *See* 11 U.S.C. § 1303*; see also Crosby v. Monroe Cty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004); *Silva v. Pro Transport, Inc.*, 898 F.3d 1335, 1341 n.6 (11th Cir. 2018). Accordingly, Young has standing to maintain her claims for money damages.

However, Young does not have standing to pursue her claims for injunctive relief. The Eleventh Circuit has found that former employees lack standing to pursue claims for injunctive relief absent factual allegations indicating that they would likely suffer future harm from the defendants. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997) (finding former employees did not have standing to pursue injunctive relief because their complaint did not allege facts that they would "be discriminated against by [Defendant] in the future nor any facts that would support such a conclusion."). Young has not alleged sufficient facts indicating that she is seeking reinstatement or facts indicating that she would otherwise benefit from the injunctive relief she now seeks. *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1136 (11th Cir. 1984). Accordingly, Young's allegations fail to indicate that she faces a future injury that is "a real and immediate- as opposed to merely conjectural or hypothetical. . . ." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994).

Debtors who fail to disclose pre-petition claims may be judicially estopped from proceeding in a civil suit. "Judicial estoppel is an equitable doctrine invoked at a court's discretion." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)) *overruled on other grounds by Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017) (en banc).

Application of the judicial estoppel doctrine prevents a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes*, 291 F.3d at 1285 (quoting 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.30, p. 134–62 (3d ed. 2000)). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749–50. Because judicial estoppel protects the process, not a specific party, the one asserting the doctrine need not show that it detrimentally relied on the other party's previous assertions or even that it was involved in the previous proceeding. *Burnes*, 291 F.3d at 1286.

The Eleventh Circuit primarily analyzes two factors when applying judicial estoppel to a particular case. *See id.* at 1285 (noting that the "two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions" in *New Hampshire*); *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir. 2003) *overruled on other grounds by Slater*, 871 F.3d 1174. First, a party's allegedly inconsistent position must have been "made under oath in a prior proceeding." *Burnes*, 291 F.3d at 1285 (*quoting Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001)). Second, the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* "[T]hese two

enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Id.* at 1286.

In signing her bankruptcy petition, Young swore under oath that she did not have any pending or potential legal claims, despite filing an EEOC Charge a mere seven days earlier. It is undisputed that Young never disclosed this EEOC charge or any potential claims[4] against Defendants to the bankruptcy court. Therefore, the first prong of the judicial estoppel test is met as it is undisputed that Young made inconsistent statements under oath. *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010).

Accordingly, the Court must determine whether Young's actions were "calculated to make a mockery of the judicial system." *Slater*, 871 F.3d at 1181. The district court must find "intentional contradictions, not simple error or inadvertence." *Robinson*, 595 F.3d at 1275 (quoting *Am. Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1536 (11th Cir.1983)). In assessing whether Plaintiff's actions were calculated to make a mockery, a district court must "look to all the facts and

---

[4] Plaintiff's EEOC charge and her other potential claims were assets due to be disclosed to the Bankruptcy Court and subject to judicial estoppel. *See Barger*, 348 F.3d at 1290-91; *Casanova v. PRE Solutions Inc.*, 228 F. App'x 837, 841 (11th Cir. 2007) ("Even though Plaintiff did not file a lawsuit before or during the pendency of his bankruptcy petition, the pending EEOC charges constitute 'administrative proceedings' and '[o]ther contingent and unliquidated claims' that Plaintiff was required to disclose on his [bankruptcy schedule].")

circumstances of the case to decide whether a plaintiff intended to mislead the court . . . ." *Slater,* 871 F.3d at 1188. Factors the district court may consider include:

> the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was [a] party, and any findings or actions by the bankruptcy court after the omission was discovered.

*Id.* at 1185.

Considering all the facts and circumstances specific to this case, the Court concludes that Plaintiff's non-disclosure was intentional rather than inadvertent. Young has not provided any explanation as to her failure to disclose. While Young is alleged to be a high school graduate, Young had filed for bankruptcy on two occasions prior to her most recent bankruptcy filing and was represented by counsel in each of her bankruptcy cases. These facts weigh against a finding that Young was inexperienced in the area of bankruptcy or that she was unaware of the need to disclose her claims. Accordingly, the Court cannot assume nor find that Young's exclusion of these claims was unintentional.

There is also no evidence that Young informed her bankruptcy attorneys of her civil claims. In the absence of evidence by Young indicating that she informed her attorneys of these claims, the Court cannot assume that Young actually disclosed

this information and that her attorneys, despite their professional obligations, chose not to disclose this information to the bankruptcy court.

It is undisputed that Young never disclosed or amended her bankruptcy asset schedule to reflect her potential claims against Defendant, even though the record before the Court indicates that she was aware of such claims. Young filed her most recent bankruptcy petition only seven days after she signed and submitted an EEOC charge. Young's subsequent Chapter 13 payment plan was also approved three weeks before Perkins submitted a letter to the EEOC indicating that Young was filing an amended EEOC charge and that he had been retained to represent her.

Therefore, Young appears to have been in bankruptcy and aware of her potential claims against Defendant, but decided not to disclose these claims or amend her schedule. Young was thus simultaneously pursuing claims against Defendant, while hiding the existence of this potential assets from the bankruptcy estate. Although Young's debts were never discharged due to her failure to comply with her payment plans, she did receive the protections of bankruptcy while her petitions were pending and the benefits of a Chapter 13 payment plan based on an assessment of her assets, which did not include the civil claims she was simultaneously pursuing. Accordingly, Young was receiving the protections of bankruptcy while hiding potential assets from her creditors.

The Court is further convinced under the circumstances of this case that Young's actions are intentional based on the fact that Young has filed for bankruptcy three times in three years and in each instance Young, after receiving temporary relief, has ultimately failed to maintain compliance with her payment plans. Young appears to have a pattern of filing for bankruptcy, receiving temporary relief, not complying with the obligations required of her, i.e. paying on her payment plans, and then filing another bankruptcy petition days after her prior bankruptcy was dismissed. These actions suggest that Young was abusing the bankruptcy court's protections for her own financial benefit. Therefore, the Court finds that Young's actions were intentional and "calculated to make a mockery of the judicial system." *Slater*, 871 F.3d at 1181. Accordingly, Plaintiff's claims for money damages are due to be dismissed as her claims for monetary relief are barred by judicial estoppel.

## IV. CONCLUSION

For the reasons stated above, the motion (doc. 26) is due to GRANTED, and this action is to be DISMISSED with PREJUDICE. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on August 14, 2019.

/s/ L. Scott Coogler
L. Scott Coogler
United States District Judge

195126